UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANJEET SINGH,

Petitioner,

v.

TONYA ANDREWS,

Respondent.

No. 1:26-cv-00457-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

Petitioner is a native of India who arrived in the U.S. on July 6, 2023 with his wife at San Luis, Arizona without a "valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document[.]" ECF No. 1 at 6, 10. They were stopped by Border Patrol agents when they entered. ECF No. 1 at 6. Petitioner has no criminal history. ECF No. 1 at 13 (I-213 Form). He was placed in expedited removal proceedings, but he requested asylum based on his past persecution in India. ECF No. 1 at 6. On July 14, 2023, he was interviewed by an asylum officer who determined that he had a credible fear of persecution. ECF No. 1 at 6, 10, 16. After being detained for 40 days, petitioner was released on August 13, 2023 on his own recognizance and ordered to appear before an Immigration Judge ("IJ"). ECF No. 1 at 6, 11 (Interim Notice

1

Authorizing Parole).  The Interim Notice Authorizing Parole indicated that ICE "has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act."[1]  ECF No. 1 at 12.  This parole was "valid for one year beginning from the date on this notice," which was August 13, 2023.[2]  Id.

Upon his release, petitioner relocated to Fresno, California, where he lived with his wife and brother-in-law.  Id.  Petitioner obtained an authorization for employment, as well as a California driver's license.  Id.  Petitioner also became involved in the local Sikh Temple in Fresno.  ECF No. 1 at 6, 19 (Letter of Support from Secretary of Gurdwara Nanak Sar Temple).  He reported as directed to the local ICE office between September 20, 2023 and June 23, 2025, when he was arrested and re-detained by ICE officers without a hearing concerning the justification for his re-detention.  ECF No. 1 at 6, 13.  He was served with a new notice to appear ("NTA") before an immigration judge, which once again charged him with entering the U.S. without lawful inspection, admission or parole.[3]  ECF No. 1 at 14.  Petitioner has been detained at the Golden State Annex in McFarland, California since June 2025, causing him physical and mental health problems based on the conditions of his confinement.  Id.

In his pro se § 2241 application, petitioner asserts that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(a), but is instead subject to the discretionary provisions of 8 U.S.C. § 1226(a)(1).  ECF No. 1 at 6.  Based on his period of living in the community on his own recognizance, petitioner contends that he was entitled to a pre-deprivation hearing before his immigration parole was revoked as a matter of procedural due process.  ECF No. 1 at 7.  In his second claim for relief, petitioner raises a substantive due process challenge to his prolonged detention absent any evidence that he is either a danger to the community or a flight risk.  Id.  Finally, petitioner asserts that respondent is violating the Immigration and Nationality Act

---

[1]  This is codified at 8 U.S.C. § 1182(d)(5)

[2]  Respondent does not challenge the authenticity of this document.  See ECF No. 6 at 2 (permitting respondent to "not include any documents relevant to the determination of the issues presented in the application unless they expressly challenge the authenticity of the records attached to petitioner's § 2241 application")

[3]  It is not clear why petitioner was issued a second NTA, though there is a notation in the I-213 form that his initial NTA was "failure to prosecute."  ECF No. 1 at 13, 16.

("INA") by interpreting it to require his mandatory detention without a bond hearing. Id. By way of relief, petitioner seeks immediate release from his unlawful detention as well as an order enjoining respondent from re-detaining him while his immigration proceedings are still pending. ECF No. 1 at 8.

Respondent filed a return to the § 2241 application on January 26, 2026.[4] ECF No. 7. According to respondent, petitioner "attempted to enter" the United States and was later released on "interim parole after receiving a positive credible fear determination by an asylum officer." ECF No. 7 at 2. At that time, he received an NTA charging him with being removable pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). Id. at 2-3. He was re-detained on June 23, 2025 pursuant to 8 U.S.C. § 1225(b)(1) because he is an "applicant for admission" to the United States despite his physical presence in this country for years based on the "entry fiction" doctrine that categorizes certain noncitizens as "detained at the border and hence as never having effected entry into this country." Id. at 4 (citing Altamirano Ramos v. Lyons, --- F. Supp. 3d ----, No. 25-09785, 2025 WL 3199872, at *6 (C.D. Cal. Nov. 12, 2025). Respondent acknowledges that "a majority of courts" have found that 8 U.S.C. § 1226 applies rather than Section 1225 in cases involving noncitizens who have already been living in the U.S. prior to being redetained. Id. at 4-5. Despite this weight of authority, respondent contends that substantive due process "does not require individualized determinations of dangerousness or flight risk to detain a noncitizen pending removal proceedings." Id. at 7 (citing Demore v. Kim, 538 U.S. 510, 514, 531 (2003). In this case, respondent submits that "there is no evidence suggesting that Petitioner's detention pending the completion of removal proceedings is 'indefinite' and 'potentially permanent'" even though his next scheduled immigration hearing was a master calendar hearing on January 27, 2026. Id. at 7; see also ECF No. 7 at 12-14 (Executive Office for Immigration Review's Automated Case Information for petitioner). Regarding the procedural due process claim, respondent asserts that "even if the Mathews [v. Eldridge] test applied here, Petitioner has not

---

[4] While acknowledging that "no separate request for a temporary restraining order has yet been filed in this [pro se] case," respondent does not oppose converting it to a motion for a preliminary injunction. ECF No. 7 at 2 n. 1. In the interests of judicial economy, the court addresses the merits of the § 2241 application as the matter has been fully briefed.

clearly shown that the test requires a bond hearing." Id. at 8.  Respondent submits that in the event that the court grants petitioner relief, the proper remedy is an individualized bond hearing and not immediate release from immigration detention.  Id. at 9.

## II.     Legal Standards

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The federal habeas statute confers subject matter jurisdiction over challenges to any individual's confinement "in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).

## A.     Constitutional Framework

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  This provision "protects individuals against two types of government action:  violations of substantive due process and procedural due process."  United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause."  Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with

4

the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### B.    Statutory Framework

The statutory and regulatory framework governing immigration detention can charitably be described as complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

While petitioner argues that his detention is governed by 8 U.S.C. § 1226(a), ECF No. 1 at 7, the undersigned largely agrees with respondent that because petitioner was initially detained under 8 U.S.C. § 1225(b)(1) and paroled under 8 U.S.C. § 1182(d)(5), he remains subject to 8 U.S.C. § 1225(b)(1) after the termination of his parole.  In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court explained the removal and detention scheme that applies to "applicants for admission":

> [A]pplicants for admission fall into one of two categories, those covered by [8 U.S.C.] § 1225(b)(1) and those covered by § 1225(b)(2).  Section 1225(b)(1) applies to [non-citizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other [non-citizens] designated by the Attorney General in his discretion.  See § 1225(b)(1)(A)(iii).  Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

Id. at 287 (emphasis added).

5

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain [non-citizens]. [Non-citizens] covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). [Non-citizens] who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those [non-citizens] "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

Id. at 287-88. "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) [non-citizens] are detained for "further consideration of the application for asylum," and § 1225(b)(2) [non-citizens] are in turn detained for "[removal] proceeding[s]."

Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(i) and § 1182(a)(6)(A)(I) and placed in expedited removal proceedings. ECF No. 1 at 10. He also applied for asylum after passing the credible fear process. His initial detention was accordingly governed by § 1225(b)(1), which mandated his "det[ention] for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Petitioner was initially released on parole pursuant to 8 U.S.C. § 1182(d)(5).[5] ECF No. 1 at 11-12. Those detained under § 1225(b)(1) may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. "Such parole, however, 'shall not be regarded as an admission of the [non-citizen].' 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, 'the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other

---

[5] Petitioner's release on parole pursuant to § 1182(d)(5) distinguishes the detention scheme in this case from the detention scheme at issue in Selis-Tinoco v. Noem, No. 25-01762, 2025 WL 3567862, at *4 (E.D. Cal. Dec. 14, 2025), and *Labrador-Prato v. Noem*, No. 25-01598, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025). In each of those cases, DHS had released the petitioner under 8 U.S.C. § 1226(a), as opposed to § 1182(d)(5).

applicant for admission to the United States.' Ibid." Jennings, 583 U.S. at 288; see also Matter of Castillo-Padilla, 25 I. & N. Dec. 257, 259 (BIA 2010) ("After the purpose of the parole has been served, the [non-citizen] returns to custody, and his or her case is dealt with in the same manner as any other applicant for admission."). As respondent notes, "[a]lthough it appears that Petitioner was granted conditional parole from August 2023 to August 2024 under 8 U.S.C. § 1182(d)(5)(A), there is no evidence that his parole authorization was extended." ECF No. 7 at 4 n.4. It thus appears that petitioner's detention reverted to § 1225(b)(1) upon his re-arrest in June 2025.[6]

Non-citizens detained under § 1225(b)(1) are subject to mandatory detention "until certain proceedings have concluded," which in petitioner's case is a proceeding for "further consideration of the application for asylum." Jennings, 583 U.S. at 297. "The plain meaning of [this] phrase[] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum[.]" Id. at 299. "Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention." Id. at 297.

**III.    Analysis**

The undersigned agrees with other district courts in this circuit that have found that a noncitizen like petitioner, who was released on parole into the United States, has a liberty interest in his continued release and is entitled to certain due process protections. See, e.g. R.A.N.O v. Wofford, No. 1:25-cv-01535-KES-EPG (HC), 2026 WL 40507 (E.D. Cal. Jan. 6, 2026); Ramirez Tesara v. Wamsley, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); Francois v. Wamsely, No. 2:25-CV-2122-RSM-GJL, 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025); Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding past precedent concerning release of individuals detained as

---

[6] The undersigned recognizes that DHS's failure to either rearrest petitioner or expressly extend his term of parole in August 2024 somewhat muddies the statutory waters here. It is possible that in light of such inaction, any subsequent arrest of petitioner would be governed by DHS's general interior arrest and detention authority under 8 U.S.C. § 1226(a). However, petitioner has not sought to develop this precise argument and the undersigned need not address it given that petitioner is entitled to relief even if his current detention is governed by § 1225(b)(1).

arriving noncitizens inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings); see also Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."  Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  Under Morrissey, 408 U.S. 471, 481 (1972), petitioner's release implied a promise that he would not be re-detained if he abided by the terms of his parole, particularly where DHS did not act to arrest him at the conclusion of his initial one-year period of parole.  There is no evidence in the record that petitioner violated any condition of his release or has any criminal record.

Having found that petitioner has a protected liberty interest, the only question remaining is what procedures are necessary to protect that liberty interest.  Under the procedural due process test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), this court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The first factor unquestionably tilts in petitioners favor.  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  Petitioner was at liberty for 22 months before being re-detained in this case.  During that time period, he obtained permission to lawfully work and drive.  He was

8

employed and was a contributing member of his religious community.  Therefore, this factor favors a finding that petitioner's private interest has been affected by his detention.

Second, the risk of erroneous deprivation also weights in petitioner's favor.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO (HC); 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (stating that "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.").  Petitioner has been detained for over seven months without being provided a bond hearing to evaluate his dangerousness and/or flight risk.  Neither party alleges that he violated any term of his parole or that he has any criminal record.  Under these circumstances, a pre-deprivation hearing before a neutral decisionmaker would have significant value in determining whether petitioner's detention is necessary.  Thus, the second Mathews factor favors petitioner.

Finally, the government's interest is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, as in this case, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." Hernandez, 872 F.3d at 994; see also R.D.T.M., 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  For all these reasons, the undersigned finds that  petitioner is entitled to relief under the Mathews factors.

Having found relief justified on petitioner's procedural due process claim, the undersigned concludes that petitioner's remaining claims are unnecessary to decide.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Petitioner be ordered to be released immediately from the respondent's custody with the same conditions that he was subject to prior to his redetention on June 23, 2025.

3. At the time of release, respondent be required to return all of petitioner's documents and possessions.

4. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which petitioner's eligibility for ongoing release must be considered.

5. Respondent be further directed to file a notice certifying compliance with the above provisions within three days from the date of any adoption of these Findings and Recommendations by the District Judge assigned to this matter.

6. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE